UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFREY WYKOSKY, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> )   Civil No. 22-cv-01881 (APM) |
| ATCS, PLLC & AYFI GROUP, | ) <br> ) |
| Defendants. | ) <br> ) |

# MEMORANDUM OPINION AND ORDER

### I.

Plaintiff Jeffrey Wykosky, proceeding *pro se*, brings suit against Defendants ATCS, PLLC ("ATCS") and AYFI Group, Inc., ("Ayfi"), alleging that Defendants retaliated against him after he reported their purported mismanagement of a government contract to the Department of Homeland Security Office of Inspector General ("OIG"). His sole claim of retaliation arises under an enhanced whistleblower provision of the National Defense Authorization Act of 2013, 41 U.S.C. § 4712 ("NDAA WPA").[1] *See* Second Am. Compl. for Equitable and Mon. Relief and Demand for Jury, ECF No. 31 [hereinafter Second Am. Compl.], ¶¶ 55–63.

Before the court is Defendant Ayfi's motion to dismiss Plaintiff's Second Amended Complaint for lack of standing and failure to state a claim upon which relief may be granted. Def.'s

---

[1] Plaintiff initially brought his claim under the Defense Contractor Whistleblower Protection Act ("DCWPA"), 10 U.S.C. § 4701. Defendants moved to dismiss on the grounds that the DCWPA protects whistleblowing with regard to conduct before the Department of Defense and the National Aeronautics and Space Administration, whereas Plaintiff's whistleblowing arose from a contract with the Federal Emergency Management Agency ("FEMA"), a component of the Department of Homeland Security ("DHS"). This court denied Defendants' motion to dismiss and granted Plaintiff leave to amend his complaint to bring a cause of action under the NDAA. *See* Order, ECF No. 30.

Mot. to Dismiss, ECF No. 32 [hereinafter Def.'s Mot.]. For the reasons that follow, Defendant Ayfi's motion is denied.

## II.

In September 2018, Plaintiff Wykosky was hired, under a contract with FEMA, as an independent contractor to work on recovery operations in Puerto Rico in the aftermath of Hurricane Maria. Second Am. Compl. ¶ 10. Plaintiff was retained by NoMuda, a third-level subcontractor to Defendant ATCS, which was the first-level subcontractor to the FEMA contract. *Id.* Defendant Ayfi was the second-level subcontractor. Def's. Mot. 2. Plaintiff was a member of the operation's Lean Six Sigma ("LSS") team, and Defendants Ayfi and ATCS, alongside FEMA, approved his labor hours and expenses. Second Am. Compl. ¶ 10.

In early 2019, Plaintiff and members of the LSS team filed three OIG reports alleging malfeasance, waste, and non-compliance in administering the FEMA contract. *Id.* ¶¶ 27–29, 37. Plaintiff alleges that FEMA and ATCS personnel were notified of the reports in May of 2019, and the next month an ATCS staff member "abruptly and prematurely terminated" the LSS team's contract. *Id.* ¶¶ 37, 48. Plaintiff further alleges that he faced "continued adverse action" after the contract's termination—specifically, that Defendant Ayfi delayed paying his wages for four months and refused to reimburse him for hotel costs incurred during a hospital stay. *Id.* ¶ 52.

## III.

At the outset, Defendant contends that Plaintiff lacks standing to bring a claim under the NDAA's Enhanced Whistleblower Protection Act because he fails to plausibly plead that any alleged harm was "fairly traceable" to Ayfi's conduct. Def.'s Mot. 7.

"The judicial Power" of the federal courts extends only to "Cases" and "Controversies," U.S. CONST. ART. III, § 2, "and there is no justiciable case or controversy unless

the plaintiff has standing," *West v. Lynch*, 845 F.3d 1228, 1230 (D.C. Cir. 2017).  "To establish standing, [a] plaintiff must show (1) [he] has suffered a concrete and particularized injury (2) that is fairly traceable to the challenged action of the defendant and (3) that is likely to be redressed by a favorable decision[ ] . . . ." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 376–77 (D.C. Cir. 2017) (internal quotation marks omitted).  Plaintiffs "bear[] the burden of establishing standing," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted), and "[t]o survive a motion to dismiss for lack of standing, a complaint must state a plausible claim that the plaintiff has suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits." *Humane Soc'y v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015).

While Plaintiff's Second Amended Complaint is not a model of clarity, the court discerns three alleged injuries: (1) the "abrupt[] and premature[] terminat[ion]" of Plaintiff's contract, Second Am. Compl. ¶ 48; (2)  late payment of Plaintiff's wages by Ayfi, *id.* ¶ 52; and (3) Ayfi's refusal to "pay several days of [Plaintiff's] hotel expenses during a hospital stay," *id*.  The court considers whether any of these injuries can sustain standing for his retaliation claim.

*Early Termination of Contract.*  Plaintiff does not allege that Ayfi terminated the LSS team's contract or was otherwise involved in the decision to do so.  *Id*. ¶¶ 48–50.  Rather, he alleges that ATCS employee Kwong Hui "abruptly and prematurely terminated" it.  *Id*. ¶¶ 35, 48.  Because the contract's termination is not "fairly traceable" to Defendant Ayfi's conduct, *see Elec. Priv. Info.*, 878 F.3d at 376–77, Plaintiff cannot predicate standing on this theory.

*Hospital Stay.*  Plaintiff alleges that after the contract's termination, "Ayfi refused to pay several days of [his] hotel expenses during a hospital stay," but did so for another contractor's hospital stay two months prior.  Second Am. Compl. ¶ 52.  Ayfi's refusal to reimburse Plaintiff is

3

a clear economic injury, *Carpenters Indus. Council v. Zinke*, 54 F.3d 1, 6 (D.C. Cir. 2017) ("A dollar of economic harm is still an injury-in-fact for standing purposes."), which is "fairly traceable" to Defendant's conduct and "likely to be redressed by a favorable decision," *Elec. Priv. Info.*, 878 F.3d at 376–77.  Plaintiff therefore has standing to bring a retaliation claim for Ayfi's alleged refusal to reimburse hotel costs incurred during his hospital stay.[2]

*Delayed Payment of Wages.*  Plaintiff alleges that Defendant delayed paying his wages for four months after he was terminated.  Second Am. Compl. ¶ 52.  Some courts have held that the delayed payment of wages constitutes an injury in fact for Article III standing purposes.  *See Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019) (holding that under New York Labor Law, the "temporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing"); *Ingegno v. Pruco Life Ins. Co.*, 20-cv-00385, 2020 WL 2111901, at *3 (S.D. Cal. May 1, 2020) ("An unreasonable delay in the payment of benefits counts as an injury in fact."); *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010) ("Every day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money.").  The court need not, at this stage, take a firm position on whether delayed payment, without more, constitutes an injury in fact.  Because Plaintiff's retaliation claim can be sustained on his refusal-to-reimburse theory, the motion to dismiss for lack of standing is denied.

---

[2] In his opposition, Plaintiffs states that "FEMA," not Ayfi, denied his expense reimbursement.  Pl.'s Resp. in Opp'n to Def.'s Mot., ECF No. 35, at 13.  Although this assertion is different than what is contained in his complaint, the court must accept as true the allegations contained in Plaintiff's pleading at the motion-to-dismiss stage.  *See Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994) ("[W]e have found no case from this or any other circuit suggesting that a trial court must consider contradictory factual allegations made in a brief opposing a motion to dismiss when ruling on a 12(b)(6) motion. In fact, the sparse case law addressing the effect of factual allegations in briefs or memoranda of law suggests that such matters may never be considered when deciding a 12(b)(6) motion,  and most certainly may not be considered when the facts they contain contradict those alleged in the complaint.").

## IV.

### A.

The court now turns to Defendant Ayfi's contention that Plaintiff fails to state a claim of retaliation. A motion to dismiss for failure to state a claim "tests the legal sufficiency of a claim." *Sickle v. Torres Advanced Enter. Sols., LLC,* 884 F.3d 338, 344 (D.C. Cir. 2018); FED. R. CIV. P. 12(b)(6). To survive a 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible" if a plaintiff pleads facts which "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. When evaluating a 12(b)(6) motion, the court must accept a plaintiff's "factual allegations . . . as true," *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 67 (D.C. Cir. 2015), and must construe the complaint "in favor of the plaintiff, who must be granted the benefit of the inferences that can be derived from the facts alleged," *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979). However, the court "need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (per curiam).

*Pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), so long as they contain "factual matter" that allows the court to "infer more than the mere possibility of misconduct," *Ashcroft*, 556 U.S. at 679. However, the liberal pleading standard for *pro se* litigants "does not constitute a license for a plaintiff filing *pro se* to ignore the Federal Rules of Civil Procedure." *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993).

B.

The NDAA WPA states that "an employee of a contractor, subcontractor, grantee, subgrantee, or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing . . . evidence of gross mismanagement of a Federal contract or grant . . . ." 41 U.S.C. § 4712. To prevail on a § 4712 claim, a plaintiff must "plausibly allege" that "(1) she was an employee of a government contractor, (2) she disclosed information that she reasonably believed was evidence of a rule violation related to a federal contract to the required person and (3) her disclosure was a contributing factor in the action taken against her." *Sargent v. Pompeo*, No. 19-cv-00620, 2020 WL 5505361, at *14 (D.D.C. Sept. 11, 2020).

*Employee of a Contractor.* Defendant first argues that Plaintiff was an independent contractor—not an employee of a government contractor—and thus is not covered by the Act. Def.'s Mot. at 10–12. Plaintiff acknowledges that he was a "1099 contractor," who held a work agreement with NoMuda, a subcontractor retained by Defendant ATCS to execute the FEMA contract. Second Am. Compl. ¶ 10. Holding a position as an independent contractor is not, however, dispositive of whether a person is nevertheless treated as an "employee" for statutory purposes. When determining whether an individual is an employee, the most important factor to consider is "the extent of the employer's right to control the 'means and manner' of the worker's performance." *Spirides v. Reinhardt,* 613 F.2d 826, 831–32 (D.C. Cir. 1979).

Here, Plaintiff alleges that an executive of ATCS, Tim McCormick, initially "approved" him as a contractor and that his "labor hours and expenses were reported and approved by [Ayfi] and ATCS." Second. Am. Compl. ¶¶ 10, 13. He also alleges that McCormick later disinvited him to meetings. *Id.* ¶ 18. An ATCS official also terminated his contract. *Id.* ¶ 48. Given the liberal

6

reading afforded to the pleadings of *pro se* plaintiffs, *Haines*, 404 U.S. at 520–21, the court finds it plausible that Plaintiff was an employee of ATCS, and therefore an employee of a government contractor, for purposes of the NDAA WPA.

*Ayfi as Contractor.*  Next, Ayfi maintains that, because Plaintiff has not pleaded that it was a "contractor" under the FEMA contract, Plaintiff fails to state a claim. Def.'s Mot. 12. But there is nothing in the NDAA WPA that limits whistleblower protection only to reprisals by government contractors.  So, even if Ayfi is not one, that does not place Ayfi beyond the Act's prohibitions.  In any event, Ayfi describes itself as "the second-level subcontractor" under the FEMA contract. Def's. Mot. 2.

*Reprisal by Ayfi.*  Ayfi further contends that Plaintiff has not alleged that it retaliated against him in any way.  *Id.* at 14–15.  But, as discussed, Plaintiff alleges that Ayfi, at least, denied him reimbursement for expenses because of his protected activity.  Second Am. Compl. ¶ 52.  Ayfi has not argued that such alleged action is not prohibited by the NDAA WPA.

*Causal Connection.*  According to Ayfi, Plaintiff's claim fails to allege sufficient facts to support a causal relationship between his protected activity and the claimed adverse action.  *Id.* at 16.  But at the motion-to-dismiss stage, a "very close" temporal proximity can give rise to a plausible inference of retaliation.  *See Pueschel v. Chao*, 955 F.3d 163, 167 (D.C. Cir. 2020) (citing cases).  Here, Plaintiff alleges protected activity as late as April 30, 2019.  Second Am. Compl. ¶ 30.  The denied reimbursement occurred in mid- to late-June 2019, after the contract termination on June 11, 2019.  *See id.* ¶¶ 48, 52.  That period of less than two months is sufficient at the pleading state to establish a plausible causal connection between protected activity and adverse action.  *See Pueschel*, 955 F.3d at 167.

*Failure to Exhaust.*  Finally, Ayfi maintains the case must be dismissed because Plaintiff failed to exhaust administrative remedies against it.  Def.'s Mot. at 13; *see* 41 U.S.C. § 4712(c)(2) (requiring exhaustion of remedies before filing suit).  Specifically, Ayfi says that "Plaintiff does not state explicitly that the complaint was filed against Ayfi for any unlawful retaliation."  Def.'s Mot. at 13.  That is true as far as it goes.  *See* Second Am. Compl. ¶ 53 (alleging that Plaintiff filed a retaliation complaint with OIG that was accepted for investigation in December 2019, but not specifying whether Ayfi was named in the complaint).  But the failure to exhaust is an affirmative defense that the defendant bears the burden of pleading and proving.  *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).  Here, Ayfi has not put Plaintiff's administrative complaint before the court, so the court is unable to confirm whether it alleges retaliatory conduct against Ayfi.  *See Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (stating, in the Title VII context, that "[a]t a minimum, the Title VII claims must arise from 'the administrative investigation that can reasonably be expected to follow the charge of discrimination'") (quoting *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)).  The court therefore cannot dismiss the complaint at this stage for failure to exhaust administrative remedies.

V.

For the stated reasons, Defendant Ayfi's Motion to Dismiss, ECF No. 32, is denied.

Dated: July 14, 2023

Amit P. Mehta
United States District Court Judge